IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00248-RBJ-KLM

MICHAEL SEAN EDMOND,

    Plaintiff,

v.

TOM CLEMENTS, the Executive Director of the Colorado Department of Corrections
(CDOC),
JEANEENE MILLER, Director of Division of Adult Parole, Community Corrections, and
Youth Offender System (YOS),
ALLISON SWEENEY-HOOVER, Community Parole Officer,
BECKY R. LUCERO, Chairman of the Colorado Board of Parole,
JAMES MEYER, LPC, Executive Director of the Bijou Treatment & Training Institute (BTTI),
and
BIJOU TREATMENT & TRAINING INSTITUTE (BTTI),

    Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on the **Motion to Dismiss Claims Against James
Meyer, LPC and Bijou Treatment & Training Institute** [Docket No. 29; Filed August 1,
2011] ("BTTI's Motion"), filed by Defendants James Meyer, LPC ("Meyer") and Bijou
Treatment and Training Institute ("BTTI"), and the **Motion to Dismiss Plaintiff's Second
Amended Complaint** [Docket No. 34; Filed August 8, 2011] ("CDOC's Motion"), filed by
Defendants Tom Clements ("Clements"), Jeaneene Miller ("Miller"), Allison Sweeney-
Hoover ("Hoover"), and Becky R. Lucero ("Lucero") (collectively, the "CDOC Defendants").
Plaintiff filed a Response [#46] in opposition to CDOC's Motion [#34] on September 19,

2011. On September 23, 2011, upon expiration of Plaintiff's deadline to file a response to BTTI's Motion, Defendants Meyer and BTTI filed a Reply "to the extent that the argument [in the Response to CDOC's Motion] concerning Plaintiff's standing to assert an equal protection claim may be in any way responsive to Defendants Meyer's and BTTI's argument that he may not assert any constitutional violations against private actors." *See Reply to BTTI's Motion* [#48] at 2. On October 17, 2011, the CDOC Defendants filed a Reply [#52] to Plaintiff's Response to CDOC's Motion. The Motions are now ripe for review. Pursuant to 28 U.S.C. § 636(b)(1) and D.C. Colo. L. Civ. R. 72.1C(3), the Motions have been referred to this Court for recommendation. *See Order Referring Case* [#12]. Having reviewed the entire case file and being sufficiently advised, the Court respectfully **RECOMMENDS** that BTTI's Motion [#29] be **GRANTED** and that CDOC's Motion [#34] be **DENIED in part and GRANTED in part**, as outlined below.

## I. Factual and Procedural Background

Plaintiff, who proceeds in this matter *pro se*, is a former prisoner with the Colorado Department of Corrections ("CDOC"). *See 2nd Am. Compl.* [#9] at 4. He brings this action against six Defendants:[1] (1) Defendant Clements, the Executive Director of CDOC; (2) Defendant Sweeney-Hoover, a Community Parole Officer; (3) Defendant Miller, the Director of the Division of Adult Parole, Community Corrections, and Youth Offender System; (4) Defendant Lucero, Chairman of the Colorado Board of Parole; (5) Defendant BTTI; and (6) Defendant Meyer, Executive Director of BTTI. *See id.* Plaintiff brings his lawsuit primarily

---

[1] Plaintiff's Second Amended Complaint lists a seventh Defendant, the Colorado Board of Parole, *see* [#9] at 2, but the District Judge dismissed that party on May 19, 2011. *See Order* [#10] at 4.

to enforce his constitutional right to due process, right to equal protection, and right against self-incrimination.  *See id.* at 6, 10, 13, 15.  In short, he alleges that: (1) the CDOC Defendants "erroneously impos[ed] the sex offender conditions as part of his parole;" (2) all Defendants interfered with his parenting rights by "prohibiting him from having any type of contact with his children;" (3) Defendants Clements, Miller, and Lucero failed to ensure that he received a mandatory sex offense evaluation; and (4) Defendant Clements failed to ensure that he received $89.50 that Plaintiff was entitled to from his CDOC Inmate Account upon his release on parole.  *Id.*  As relief, Plaintiff requests that: (1) he be given the sex offense specific evaluation; (2) that he be given the Parental Risk Assessment ("PRA") at no expense;[2] and (3) that he be given the $89.50 he claims is owed to him.  *See id.* at 16.

Plaintiff attests that, some time in 1999, a case was initiated against him for an unspecified offense (Case No. 99CR4252 [the "1999 Case"]).  *See 2nd Am. Compl.* [#9] at 6.  Pursuant to a plea agreement, he was sentenced to ten years in prison with a five-year mandatory parole period.  *See id.*  Plaintiff avers that CDOC failed to "conduct a sex offense specific *evaluation* of the Plaintiff while he was serving his 10-year prison sentence for [the 1999 Case] as required by C.R.S. §§ 16-11.7-101 and 16-11.7-105(1), CDOC Admin. Reg. No. 700-19(IV)(G), and SOMB Standard 2.000."  *Id.* at 7 (emphasis in original).

Plaintiff further asserts that, on December 20, 2000, he was arrested for the offense

---

[2]  Plaintiff states that the PRA is part of the sex offense specific evaluation.  *See 2nd Am. Compl.* [#9] at 12.  Thus, in the following discussion, the Court only refers to the sex offense specific evaluation and not the PRA as a separate assessment.

of Sexual Assault-10 Year Age Difference, a class one misdemeanor under Colorado law (Case No. 00M10851 [the "2000 Case"]).[3]  *See id.* at 6.  On July 4, 2004, he accepted a plea agreement and pleaded guilty to the charge, in conjunction with which, on October 13, 2004, he received a one-year jail sentence, which was to run concurrently with the ten-year sentence imposed in the 1999 Case.  *See id.*  He avers that "the El Paso County District Court failed to ORDER a sex offense specific *evaluation* be conducted as part of the Plaintiff's presentence investigation report (PSIR) for [the 2000 Case] as required by C.R.S. §§ 16-11-102(1)(b) and 16-11.7-105(1) and Sex Offender Management Board (SOMB) Standards and Guidelines (Standards) 2.020."  *Id.* at 6-7 (emphasis in original).

On November 24, 2009, and December 17, 2009, prior to his release for the five-year mandatory parole period in connection with the 1999 Case, Plaintiff signed Notices to Register as a Sex Offender.  *See id.* at 3.  On January 4, 2010, he signed a Parole Board Order that stated, as one of its conditions, that, "Parolee *shall* participate in an assessment/*evaluation* to determine CPSOP (Community/Parole Sex Offender Program) supervision."  *Id.* (emphasis in original).  Plaintiff avers that he was never scheduled for this mandatory evaluation.  *See id.* at 8.

On August 27, 1997, Plaintiff was released on parole from his incarceration with respect to two criminal matters, Case Nos. 94CR087 and 94CR2207.  *See id.* at 3.  On January 6, 2010, Plaintiff filed a Step 1 CDOC Grievance for not having received $100.00 in connection with that parole, "as required by C.R.S. § 17-22.5-202(1)."  *Id.*  As a result of

---

[3]  The Second Amended Complaint does not make clear how, if Plaintiff was sentenced to ten years in prison in connection with the 1999 Case, he was free to be arrested in connection with the events underlying the 2000 Case.

his grievance, Plaintiff states that his CDOC Inmate Account was credited with $100.00 on January 7, 2010. *See id.* Plaintiff avers that he should have received $89.50 (the $100.00 minus $10.50 for a Colorado identification card) when he was released on parole for the 1999 Case on January 14, 2010.[4] *See id.* at 15.

Upon his release, Plaintiff was assigned to the regional Community/Parole Sex Offender Program ("CPSOP") with Defendant Sweeney-Hoover as his parole supervisor. *See id.* at 4. Plaintiff states that, "pursuant to CDOC Admin. Reg. No. 250-48(IV)(D)(1), [he] signed all of the initial office visit documents, including sex offender specific documents such as the 'Sex Offender Supervision Directive/Lawful Order' and the 'Notice to Register As A Sex Offender.'" *Id.*

Defendant Sweeney-Hoover referred Plaintiff to Defendant BTTI. *See id.* at 8. On January 19, 2010, he was admitted to Defendant BTTI's Sex Offense Specific treatment program, after completion of the intake process "under duress and coercion." *Id.* at 8. One of the documents Plaintiff signed was the Treatment Contract for Sex Offenders, which included the statement, "I will have no contact in any form with any children under the age of 18, including my own children or other family members." *Id.* at 11. Plaintiff states that he "was *not* given the *mandatory* sex offender specific *evaluation* required by C.R.S. §§ 16-11.7-104(1) and 16-11.7-105(2) prior to the erroneous imposition of the sex offender conditions as part of his parole and his admittance into Defendant BTTI's Sex Offense Specific treatment program." *Id.* at 8 (emphasis in original).

---

[4] With respect to the $89.50, Plaintiff later filed a Step 2 CDOC Grievance, which was denied by CDOC on June 1, 2010, and a Step 3 CDOC Grievance, which was denied by CDOC on October 28, 2010, thereby exhausting his administrative remedies. *See 2nd Am. Compl.* [#9] at 15.

Plaintiff further alleges that, on March 2, 2010, Defendant Sweeney-Hoover added him to a list of parolees who needed to take the sex offender specific evaluation and plethysmograph test, "because she said the CDOC had finally received the funds in which to pay for the *mandatory* sex offender specific *evaluations* to be conducted." *Id.* at 5 (emphasis in original). In spite of this, Plaintiff states that he was never scheduled to take the evaluation. *See id.* Plaintiff asserts that, because he was never given the evaluation, he was wrongfully forced to participate in the sex offender program as a condition of his parole. *See id.* at 8-9. On January 31, 2011, Plaintiff filed this lawsuit. *See Compl.* [#1].

The CDOC Defendants responded to Plaintiff's Second Amended Complaint [#9] with CDOC's Motion [#34]. They assert that Plaintiff's claims against them should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim on which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). *See CDOC's Motion* [#34] at 3-4. They aver that: (1) Plaintiff's "damage claims against the CDOC Defendants in their official capacities are barred by the Eleventh Amendment;" (2) Plaintiff's "claims against Defendants Clements, Miller, and Lucero fail for lack of personal participation;" and (3) Plaintiff's "claims are barred by res judicata and collateral estoppel." *Id.* at 4-6. They further assert that: (1) "[v]iolations of state law and administrative regulations do not state a constitutional claim;" (2) Plaintiff fails to state a claim for due process; (3) Plaintiff fails to state a claim for equal protection; (4) Plaintiff fails to state a claim under the Fifth Amendment; and (5) Plaintiff fails to state a claim for negligence. *Id.* at 8-13. The CDOC Defendants additionally argue that Plaintiff fails to state a claim for damages and that they are entitled to qualified immunity. *See id.* at 13-15.

Defendants Meyer and BTTI responded to Plaintiff's Second Amended Complaint

[#9] with BTTI's Motion [#29].  They assert that Plaintiff has failed to state a claim on which

relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).  *See BTTI's Motion* [#29] at 4.

In support, they proffer three primary arguments: (1) "[t]he procedure for admission into a

sex offender treatment facility and for administration of evaluations is governed by the State

and by SOMB guidelines, not the Approved Treatment Provider;" (2) Defendants "BTTI and

Meyer are not state actors and Plaintiff cannot allege a constitutional violation against a

private actor and private treatment facility;" and (3) "Plaintiff's right to parent his children

without governmental interference is not a Constitutional Right."  *Id.* at 4, 7, 11.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is to test

whether the Court has jurisdiction to properly hear the case before it.  Because "federal

courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise

its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir.2002); see Fed. R. Civ. P.

12(b)(1).  Statutes conferring subject-matter jurisdiction on federal courts are to be strictly

construed.  *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  "The burden

of establishing subject-matter jurisdiction is on the party asserting jurisdiction."  *Id.* (citing

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) may take two forms: facial

attack or factual attack.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When

reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint

as true.  *Id.*  By contrast, when reviewing a factual attack on a complaint, the Court "may

not presume the truthfulness of the complaint's factual allegations."  *Id.* at 1003.  With a

factual attack, the moving party challenges the facts upon which subject-matter jurisdiction

depends.  *Id.*  The Court therefore must make its own findings of fact.  *Id.*  In order to make

its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow

affidavits, other documents, and a limited evidentiary hearing."  *Id.* (citing *Ohio Nat'l Life

Ins. Co. v.. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825

F.2d 257, 259 n.5 (10th Cir.), cert. denied, 484 U.S. 986 (1987)).  The Court's reliance on

"evidence outside the pleadings" to make findings concerning purely jurisdictional facts

does not convert a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) into a motion for

summary judgment pursuant to Fed. R. Civ. P. 56. *Id.*

　　　The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test "the

sufficiency of the allegations within the four corners of the complaint after taking those

allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed R. Civ.

P. 12(b)(6) (A complaint may be dismissed for "failure to state a claim upon which relief can

be granted.").  "The court's function on a Rule 12(b)(6) motion is not to weigh potential

evidence that the parties might present at trial, but to assess whether the plaintiff's

complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton

v. Utah State Sch. for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir. 1999) (citation

omitted).  To withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a

complaint must contain enough allegations of fact 'to state a claim to relief that is plausible

on its face.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting

*Twombly*, 550 U.S. at 570); *see also Shero v. City of Grove, Okl.*, 510 F.3d 1196, 1200

(2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible

grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting

*Twombly*, 550 U.S. at 570)).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted).

The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not shown that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 129 S. Ct. at 1950 (quotation marks and citation omitted).

When considering Plaintiff's Second Amended Complaint [#9] and Response [#46], the Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## III. Analysis

### A. CDOC's Motion to Dismiss

The CDOC Defendants argue that Plaintiff's Second Amended Complaint should be dismissed pursuant to both Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction) and Fed. R. Civ. P. 12(b)(6) (failure to state a claim).  *See CDOC's Motion* [#34] at 3-4.

### 1.  Fed. R. Civ. P. 12(b)(1)

The Court first addresses the CDOC Defendants' only argument with respect to subject matter jurisdiction: Eleventh Amendment immunity.[5]  *See Ins. Corp. of Ireland, Ltd. v. Compagnie Des Bauxites de Guinee*, 456 U.S. 694, 701 (1982) (noting that subject matter jurisdiction determines a federal court's power to adjudicate a dispute); *Lewis v. ex rel. Lewis v. Stevenson*, 123 Fed. App'x 885, 887 (10th Cir. 2005) (citing *Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998) ("Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further.").

Eleventh Amendment immunity challenges a court's subject matter jurisdiction.  *See Robinson v. Kansas*, 295 F.3d 1183, 1188 (10th Cir. 2002).  Here,  Plaintiff appears to seek monetary damages only from Defendant Clements,[6] for the sum of $89.50.  *See 2nd Am. Compl.* [#9] at 16.  Defendant Clements argues that the Eleventh Amendment immunizes him from claims made against him in his official capacity.  To the extent that the claim is

_____

[5]  The Court previously dismissed the Colorado Parole Board pursuant to Eleventh Amendment immunity, because "[t]he Eleventh Amendment applies to all suits against the state and its agencies, regardless of the relief sought."  *Order to Dismiss in Part and to Draw Case to a District judge and Magistrate Judge* [#10] at 3 (citing *Higganbotham v. Okla. Transp. Comm'n*, 328 F.3d 638, 644 (10th Cir. 2003)).

[6]  Thus, the Eleventh Amendment argument made on behalf of all the CDOC Defendants appears to be unnecessary, except for Defendant Clements.  However, to the extent that Plaintiff may be claiming monetary damages against the other CDOC Defendants in their official capacities, the present discussion equally applies to them.

asserted against him in his official capacity for monetary damages, the Court notes that he is, indeed, immune from liability.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  The Eleventh Amendment protects states and their agents from suit in their official capacities.  *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59 (10th Cir. 2000).  Further, "[n]either states nor state officers sued in their official capacity are 'persons' subject to suit under section 1983."  *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir.1994).  Thus, Plaintiff's claim for monetary relief against Defendant Clements in his official capacity should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

Plaintiff also seeks prospective injunctive relief.[7]  *See Merryfield v. Jordan*, 431 Fed. App'x 743, 746 (10th Cir. 2011) (stating that suit for prospective injunctive relief may be proper "for ongoing violations of federal law" by state officials) (citing *Ex Parte Young*, 209 U.S. 123, 159-60 (1908)).  The Eleventh Amendment does not immunize Defendants from such relief.  *See, e.g.*, *Neiberger v. Hawkins*, 70 F. Supp. 2d 1177, 1190 (D. Colo.1999) (concluding that "federal jurisdiction over the individual Defendants in their official capacities for prospective [injunctive] relief is not barred by the Eleventh Amendment and is instead allowed under the *Ex Parte Young* exception").

Thus, unlike claims for money damages against federal officials in their official capacities, the doctrine of sovereign immunity does not bar Plaintiff's claim against the CDOC Defendants for prospective injunctive relief from constitutional violations.  *Simmat*

---

[7]  Although Plaintiff only uses the word "declaratory judgment" in his Second Amended Complaint [#9], he clearly is also seeking prospective injunctive relief to prevent a continuing violation of his constitutional rights.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that the Court must construe the filings of a *pro se* litigant liberally).

*v. United States Bureau of Prisons*, 413 F.3d 1225, 1233 (10th Cir. 2005) (holding that sovereign immunity does not bar an action against federal prison officials for injunctive relief from alleged constitutional violations).   However, to establish his entitlement to this form of relief, Plaintiff's Second Amended Complaint must include sufficient factual allegations to state a claim for a constitutional violation.  *Abu-Fakher v. Bode*, 175 Fed. App'x 179, 181 (10th Cir. 2006).   As set forth below, the Court concludes that Plaintiff's Second Amended Complaint adequately states a claim for a Due Process violation.

### 2.  Fed. R. Civ. P. 12(b)(6)

#### a.    Claims

##### i. Fifth Amendment

Along with due process and equal protection claims, Plaintiff's first claim alleges that the CDOC Defendants violated "his Fifth Amendment right against self-incrimination by erroneously imposing the sex offender conditions as part of his parole."  *See Second Am. Compl.* [#9] at 6.  The Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The United States Supreme Court has held that the privilege against self-incrimination of the Fifth Amendment is "to be enforced against the States under the Fourteenth Amendment according to the same standards that protect those personal rights against federal encroachment."  *Malloy v. Hogan.*, 378 U.S. 1, 10-11 (1964).  The United States Supreme Court has further held that "a violation of the constitutional *right* against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case."  *Chavez v. Martinez*, 538 U.S. 760, 770 (2003).

Here, Plaintiff argues that because he was not given the mandatory sex offender evaluation as part of his parole, and because he signed the intake paperwork at BTTI, his right against self-incrimination was violated.   Plaintiff, however, has alleged no facts indicating that he was "compelled to be a witness against himself in a criminal case." *Id.* Therefore, Plaintiff's claim pursuant to the Fifth Amendment fails as a matter of law.

## ii. Equal Protection Claim

Along with other constitutional infringements, Plaintiff's first, second, and third claims allege equal protection violations.   The Equal Protection Clause prohibits the government from treating similarly situated individuals differently.   *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).   For a plaintiff to state an equal protection claim, he must allege that the defendants either denied him a fundamental right or provided differential treatment based on a suspect classification.   *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995).   If the plaintiff is not a member of a protected class and does not assert a fundamental right, the Court must only determine whether the alleged discriminatory action has a rational basis.   *Id.*; *see also Gwinn v. Awmiller*, 354 F.3d 1211, 1228 (10th Cir.2004) (holding that "absent an allegation of a suspect classification, our review of prison officials' differing treatment of various inmates is quite deferential" and considers only whether the treatment was "reasonably related to a legitimate penological purpose").

Plaintiff's claim is subject to dismissal where he fails to identify any parolee similarly situated to him.   *Id.*; *see also Keck v. Zenon*, 240 Fed. App'x. 815, 819-20 (10th Cir. 2007) (dismissal of equal protection claim proper when inmate fails to offer facts that similarly-situated inmates were subject to administrative segregation); *Templeman v. Gunter*, 16

F.3d 367, 371 (10th Cir. 1994) (given that decision to segregate inmate was discretionary and based upon a number of factors, dismissal proper when inmate unable to identify similarly-situated inmate).   Plaintiff has failed to identify the suspect classification that applies or name other parolees similarly situated who were treated differently.  His equal protection claim therefore fails.

### iii.  Due Process Claim

Along with the other constitutional violations, Plaintiff's first, second, and third claims allege due process infringements.  Plaintiff argues that the sex offender conditions imposed upon him as part of his parole improperly denied him contact with his children in violation of the Due Process Clause of the Fourteenth Amendment.  The Fourteenth Amendment's Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law . . . . "  U.S. Const. amend. XIV, § 1.  The Court analyzes due process claims in two steps.  *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Id.*

Thus, Plaintiff must first establish that he was deprived of a constitutionally-protected liberty or property interest.  *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.").  Plaintiff does not argue that he was deprived of a property interest.[8]  Thus the

---

[8]  Plaintiff's claim for money he is allegedly owed from his inmate account is not related to his claims for alleged constitutional violations.

Court examines whether Plaintiff had a liberty interest.

A parolee has two sources of a liberty interest, those that are inherent in the Due Process Clause and those that are created by state law. *See Boutwell v. Keating*, 399 F.3d 1203, 1212 (10th Cir. 2005). The United States Supreme Court has held that "parents have a liberty interest, protected by the Constitution, in having a reasonable opportunity to develop close relations with their children." *Wirsching v. Colorado*, 360 F.3d 1191, 1198 (10th Cir. 2004) (citing *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982); *Caban v. Mohammed*, 441 U.S. 380 (1979); *Stanley v. Illinois*, 405 U.S. 645, 651-52 (1972)). Thus, because he alleges that the parole board deprived him of contact with his children without due process of law, Plaintiff has alleged deprivation of a constitutionally-protected liberty interest.

Plaintiff does not argue that the state statutes regulating imposition of sex-offender conditions are themselves unconstitutional. Rather, he argues that they were not followed by the State as applied to him and, because they were not followed, he was deprived of due process. "A state's failure to follow its own statutory criminal procedures may, in some circumstances, constitute a deprivation of due process." *Martinez v. Romero*, 626 F.2d 807, 810 (10th Cir. 1980). In other words, a state or state entity's failure to follow its own rules will only give rise to relief if "failure to follow the rules also constituted a violation of due process guaranteed by the federal constitution." *Ellis v. Mullin*, 56 Fed. App'x 858, 862 (10th Cir. 2003) (citing *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980)). As already stated, Plaintiff asserts that his guaranteed liberty interest in having a reasonable opportunity to develop close relations with his children has been violated. *See Wirsching*, 360 F.3d at 1198.

Plaintiff argues that two statutes require a sex offender specific evaluation.  *See Response* [#46] at 11 (citing C.R.S. §§ 16-11.7-104(1), 16-11.7-105(1)).  C.R.S. § 16-11.7-104(1) requires a sex offender to submit to a sex offender evaluation in order to be considered for probation.  *See People v. Boling*, 261 P.3d 503, 505 (Colo. App. 2011) (citing *People v. Lenzini*, 986 P.2d 980, 983 (Colo. App. 1999)).  In addition, based on the that evaluation, C.R.S. § 16-11.7-105(1) requires the sex offender to undergo treatment based on the evaluation's recommendations.  *See id.* (citing *People v. Meidinger*, 987 P.2d 937, 939 (Colo. App. 1999) (holding that it was error to impose sex offender conditions as part of probation without also ordering the statutorily required sex offender evaluation)).

C.R.S. § 16-11.7-104(1) "specifically applies to sex-offender-specific evaluations for defendants who are to be considered for probation."  *Lenzini*, 986 P.2d at 982-83.  "[E]ach convicted adult sex offender . . . who has a committed a sexual offense who is to be considered for probation shall be required, as part of the . . . probation investigation . . . to submit to an evaluation for treatment [and] an evaluation for risk."  C.R.S. § 16-11.7-104(1).

Plaintiff does not argue that the parole board did not order his evaluation.  Rather, the point of Plaintiff's argument is that the State employees delayed in providing him with his evaluation and, in the meantime, placed him in a higher-risk assessment category, thereby depriving him of contact with his children.  Thus, in consideration of the preceding discussion, the Court, while making no comment as to the ultimate success of such a due process claim, finds that Plaintiff has asserted a claim colorable enough to survive the

CDOC Defendants' Motion to Dismiss.[9]

Three of the four CDOC Defendants—Defendants Clements, Miller, and Lucero—further contend that Plaintiff has failed to allege that they personally participated in the purported violation of Plaintiff's constitutional rights. *See CDOC's Motion* [#34] at 5-6. Plaintiff's assertion appears to be, in part, that these Defendants personally participated in the violation of his rights through their alleged "negligence, negligent supervision, failure to instruct or warn, and failure to implement proper training procedures for community parole officers." *See 2nd Am. Compl.* [#9] at 13. As previously noted, Plaintiff alleges that Defendant Clements was the Executive Director of CDOC, that Defendant Miller was the Director of the Division of Adult Parole, Community Corrections, and Youth Offender System, and that Defendant Lucero was the Chairman of the Colorado Board of Parole. *See 2nd Am. Compl.* [#9] at 2.

"Individual liability under [42 U.S.C.] § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)); *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976) ("Personal participation is an essential allegation in a Section 1983 claim." (citations omitted)). Defendants are personally involved in an alleged constitutional violation only if there is an "affirmative link" between their conduct and

---

[9] Defendants Meyer and Bijou state that, since the date that Plaintiff filed this lawsuit, he has received a sex offender specific evaluation. *See BTTI's Motion* [#29] at 3. However, none of the Defendants have filed any documentation confirming this assertion. Plaintiff's Response neither confirms nor denies this assertion. Thus, the Court has no way of knowing at this stage whether Plaintiff has received his evaluation and, therefore, whether Plaintiff's related claims may be moot. Accordingly, the Court has no choice but to recommend that the CDOC Defendants' Motion to Dismiss Plaintiff's due process claims be denied.

the alleged violation.  *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156 (10th Cir. 2001).  Because of the "affirmative link" requirement, a defendant in a position of general supervisory authority cannot be held vicariously liable for alleged constitutional violations committed by his subordinates.  *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."); *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) ("[S]upervisor status by itself is insufficient to support liability." (citing *Rizzo v. Goode*, 423 U.S. 362, 376 (1976))); *Ruark v. Solano*, 928 F.2d 947, 950 (10th Cir. 1991) ("'[T]here is no concept of strict supervisor liability under section 1983.' " (quoting *Harris v. Greer*, 750 F.2d 617, 618 (7th Cir.1984))); *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir.1983) ("A defendant cannot be liable under a *respondeat superior* theory in a section 1983 case." (citing *McClelland v. Facteau*, 610 F.2d 693 (10th Cir.1979))).

Courts have explained that a defendant in a supervisory position may be personally involved in an alleged constitutional violation committed by his subordinates in two situations.  First, the supervisor may be personally involved when he personally directs his subordinates to take the action that resulted in the alleged constitutional violation. *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir.1992).  Second, the supervisor may be personally involved when he has actual knowledge that his subordinates are committing the alleged constitutional violation and he acquiesces in its commission. *Id.* (citing *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (stating that supervisor liability requires "allegations of personal direction or of actual knowledge and acquiescence")); *see also id.* at 1399 n.11 (To show an affirmative link between the

defendant supervisor's conduct and unconstitutional behavior by his subordinates, a plaintiff must establish "an intentional, conscious, and deliberate act by the defendant participating in, or knowingly acquiescing in, the unconstitutional behavior.").

In this case, Plaintiff has failed to allege any specific conduct by Defendants Clements, Miller, or Lucero. *See, e.g.*, *2nd Am. Compl.* [#9] at 9 (suggesting that Defendants Clements, Miller, and Lucero are liable because Plaintiff "was *never* given the *mandatory* sex offender specific *evaluation*," and thus the sex offender conditions were erroneously imposed as part of his parole) (emphasis in original); *id.* at 12 (suggesting that Defendants Clements, Miller, and Lucero are liable because Plaintiff was never given a PRA, thereby "wrongfully prohibiting him from having any type of contact with his children"); *id.* at 14 (suggesting that Defendants Clements, Miller, and Lucero are liable because, if they had properly and adequately trained Defendant Sweeney-Hoover, he would have received his mandatory sex offense specific evaluation and his constitutional rights would not have been violated).  Even liberally construing the allegations in Plaintiff's Second Amended Complaint, Plaintiff has failed to allege that these Defendants either personally directed their subordinates to take or to refrain from the action that resulted in the alleged constitutional violation or that they had actual knowledge that their subordinates were committing the alleged constitutional violation.  *See Woodward*, 977 F.2d at 1400.  Without such allegations, Plaintiff's assertions are insufficient to state a claim.

The Court further notes that, to the extent that Plaintiff is claiming constitutional violations due to negligence, "negligent conduct does not implicate the due process clause of the Fourteenth Amendment to afford section 1983 relief." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990) (citing *Daniels v. Williams*, 474 U.S. 327 (1986)).  In

addition, to the extent that Plaintiff is claiming constitutional violations due to negligent supervision, such claims are "insufficient to support a § 1983 claim." *J.W. v. Utah*, 647 F.3d 1006, 1012 (10th Cir. 2011) (citation omitted).

Accordingly, the Court recommends that Plaintiff's claims against Defendants Clements, Miller, and Lucero in their individual capacities be dismissed and that Plaintiff's third claim be dismissed in full pursuant to Fed. R. Civ. P. 12(b)(6).

### iv.  Monetary Damages Pursuant to C.R.S. § 17-22.5-202(1)

With respect to Plaintiff's fourth claim, he avers that, pursuant to C.R.S. § 17-22.5-202(1), Defendant Clements was required to give him $89.50 when he was paroled on January 14, 2010. *See 2nd Am. Compl.* [#9] at 15-16.  In part, this statute states, "The executive director or the executive director's designee may furnish any inmate being released on parole a reasonable sum of money not to exceed one hundred dollars . . . ." C.R.S. § 17-22.5-202(1).  Plaintiff asserts that he should receive $100.00, minus the $10.50 it cost him to buy a Colorado identification card.

Plaintiff's claim fails as a matter of law.  The statute cited by Plaintiff only applies to offenders who committed crimes prior to July 1, 1979.  *See* C.R.S. §§ 17-22.5-201 *et seq.* (designated as applicable only to "offenders sentenced for crimes committed prior to July 1, 1979").  Plaintiff has not alleged that he was sentenced for a crime committed before July 1, 1979.  Moreover, the statute's language is permissive ("may furnish"), not mandatory.  Thus, Plaintiff's claim for monetary damages pursuant to C.R.S. § 17-22.5-202(1) against Defendant Clements fails.[10]

---

[10]  These are the only monetary damages sought by Plaintiff. *See 2nd. Am. Compl.* [#9] at 16.  The CDOC Defendants also assert a defense pursuant to the Prisoner Litigation Reform Act

### b.   Defenses

### i.   *Res Judicata* and Collateral Estoppel

The CDOC Defendants argue that the doctrines of *res judicata* and collateral estoppel bar Plaintiff's claims,[11] because he had filed a lawsuit in state district court based on the same claims, same parties, and same issues as in the present lawsuit. *See CDOC's Motion* [#34] at 6-7.

Although occasionally used to refer to the narrower concept of claim preclusion, the doctrine of *res judicata* traditionally subsumes both claim preclusion and issue preclusion, which is sometimes called collateral estoppel. *See, e.g.*, *Carter v. City of Emporia*, 815 F.2d 617, n.2 (10th Cir.1987).   "The doctrine of *res judicata*, or claim preclusion, will prevent a party from re-litigating a legal claim that was or could have been the subject of a previously issued final judgment." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005).

*Res judicata* bars a subsequent claim if four elements are met: "(1) the prior suit

---

("PLRA") to Plaintiff's "claim for compensatory damages." *See CDOC's Motion* [#34] at 13-14. Specifically, they point to 42 U.S.C. § 1997e(e), which states that, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  The Court need not reach this issue, however, because Plaintiff has not asserted a claim for compensatory damages, only for actual damages related to money in his inmate account. *See 2nd Am. Compl.* [#9] at 16. The Court notes, though, that Plaintiff has not brought any claim related to mental or emotional injury, as contemplated by 42 U.S.C. § 1997e(e).  Further, the PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." *Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1177 (10th Cir. 2011) (citations omitted).  There is no indication that Plaintiff was "incarcerated or detained" at the time he instigated this lawsuit on January 31, 2011, and a parolee does not fall under the definition of "prisoner."

[11]   The CDOC Defendants do not state whether these defenses relate to all or some of Plaintiff's claims. *See CDOC's Motion* [#34] at 6-7.

must have ended with a judgment on the merits; (2) the parties must be identical or in privity; (3) the suit must be based on the same cause of action; and (4) the party must have had a full and fair opportunity to litigate the claim in the prior suit." *In re Mersmann*, 505 F.3d 1033, 1049 (10th Cir .2007) (citing *Nwosun v. Gen. Mills Rests.*, 124 F.3d 1255, 1257 (10th Cir.1997)).   Collateral estoppel bars relitigation of an issue if: (1) the issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) the party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding. *Nichols v. Bd. of Cty. Commissioners of County of La Plata, Colorado*, 506 F.3d 962, 967 (10th Cir. 2007) (quoting *Bebo Constr. v. Mattox & O'Brien, P.C.*, 990 F.2d 78, 84-85 (10th Cir. 1999)).   Defendants have the burden of setting forth facts sufficient to satisfy the elements of *res judicata* and collateral estoppel. *Bebo Constr.*, 990 F.2d at 85; *Nwosum*, 124 F.3d at 1255.

In support of their argument, the CDOC Defendants filed Plaintiff's state court complaint and the order dismissing his case. See *State Compl.* [#34-1]; *Order Regarding Defendants' Motion to Dismiss* [#34-2].   However, "[w]here a district court considers matters outside the complaint in deciding a motion to dismiss, the court must convert the motion to one for summary judgment and notify the parties of the conversion and provide them with the opportunity to present all materials pertinent to such a motion under Rule 56." *Divine Church of God & Christ v. Taxation & Revenue Dep't*, No. 97-2068, 1997 WL 355326, at *1 (10th Cir. June 27, 1997) (citing *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)) (stating that failure to convert a motion to dismiss to a Rule 56 motion was

reversible error where the defendants asserted collateral estoppel and the court considered the relevant order issued by the state court in the underlying action).

Here, though, even were the Court to consider the underlying state court order, it could not dismiss Plaintiff's claims on that basis. The Order dismissing Plaintiff's state court lawsuit relates, in part, that "the Court lacks subject matter jurisdiction, Plaintiff's claims are moot . . . [and] Plaintiff's Complaint fails to state a claim upon which relief can be granted." *See Order Regarding Defendants' Motion to Dismiss* [#32-2]. The Order does not state which of Plaintiff's claims were dismissed for lack of subject matter jurisdiction, and, accordingly, were never considered on the merits, and which were dismissed for other reasons. Without this information, the Court cannot find that either *res judicata* or collateral estoppel applies, as each of these doctrines requires there to have been a judgment on the merits. *See In re Mersmann*, 505 F.3d at 1049; *Nichols*, 506 F.3d at 967; *see also Slocum v. Corporate Exp. U.S. Inc.*, No. 11-5083, 2011 WL 5289022, at *3 (10th Cir. Nov. 2, 2011) (stating that an "adjudication on the merits . . . requires an evaluation of the substance of a complaint" and is "not a technical or procedural dismissal").

Accordingly, the Court recommends that the CDOC Defendants' motion to dismiss on the grounds of *res judicata* and collateral estoppel be denied.

## ii. Qualified Immunity

The CDOC Defendants also claim qualified immunity from Plaintiff's claims.[12] "A qualified immunity defense is only available to parties sued in their individual capacity." *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005). Based on the discussion above,

---

[12] The CDOC Defendants do not state whether this defense relates to all or some of Plaintiff's claims. *See CDOC's Motion* [#34] at 14-15.

the only CDOC Defendant facing an individual capacity claim is Defendant Sweeney-Hoover, from whom Defendant is seeking prospective injunctive relief only.

Qualified immunity only applies to individual-capacity claims for damages.  *See Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).  Because Plaintiff's remaining claim against Defendant Sweeney-Hoover involves only a request for prospective injunctive relief, qualified immunity is inapplicable to Defendant Sweeney-Hoover.

### c. Requested Relief

Plaintiff requests relief in the form of monetary damages, declaratory judgment, and prospective injunctive relief.  The Court has already disposed of Plaintiff's only claim for monetary damages, the $89.50 from Plaintiff's inmate account.   The Court therefore examines Plaintiff's requests for declaratory judgment and prospective injunctive relief.

### i. Injunctive Relief

Liberally reading the Second Amended Complaint [#9], Plaintiff seeks a Court order requiring Defendants to give him a sex offender specific evaluation, including a PRA. "Where a plaintiff seeks an injunction, his susceptibility to *continuing* injury is of particular importance—'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Jordon v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).  Plaintiff has alleged facts illustrating that he has been injured in an ongoing and continuous manner by having been categorized as a high-level sex offender without having been given the required evaluations beforehand, thus

leading to the parole requirement that he not see his own children.[13]   Thus, Plaintiff has alleged the "real and immediate" injury necessary to a request for prospective injunctive relief.  *See Rizzo v. Goode*, 423 U.S. 362, 372 (1976) (stating that claim for injunctive relief was moot where allegations of "real and immediate" injury were attenuated).

### ii.  Declaratory Judgment

Plaintiff asks the Court for three forms of declaratory relief.  *See 2ⁿᵈ Am. Compl.* [#9] at 16.   First, he requests a "declaratory judgment declaring that the Defendants were required to give the Plaintiff a *mandatory* sex offense specific evaluation as prescribed by § § 16-11.7-104(1) and 16-11.7-105(2) prior to imposing the sex offender conditions as part of his parole."  *Id.* (emphasis in original).   Second, he requests a "declaratory judgment declaring that the Defendants are required to conduct a Parental Risk Assessment (PRA) of the Plaintiff as required by SOMB Standard 5.730 at *no* expense to him."  *Id.* (emphasis in original).   Third, he requests a "declaratory judgment declaring that pursuant to C.R.S. § 17-22.5-202(1), the Defendant Tom Clements was required to furnish the Plaintiff $89.50 for him being paroled on January 14, 2010, for [the 1999 Case]."  *Id.*   In part, the CDOC Defendants argue that these requests are moot.  *See CDOC's Reply* [#52] at 1-4.

"Where a plaintiff seeks both an injunction and declaratory relief, the district court has a duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of an injunction."  *Jordan*,

---

[13] As the Court previously noted, Defendants Meyer and Bijou state that, since the date that Plaintiff filed this lawsuit, he has received a sex offender specific evaluation.  *See BTTI's Motion* [#29] at 3.  However, the Court has no way of knowing at this stage whether Plaintiff has received his evaluation and, therefore, whether Plaintiff's request for prospective injunctive relief may be moot.

654 F.3d at 1025 (internal quotations omitted) (quoting *Super Tire Eng'g Co. v. McCorckle*, 416 U.S. 115, 121 (1974)).  "It is well established that what makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute which affects the behavior of *the defendant toward the plaintiff*."  *Id.* (citations omitted).  In other words, "where a plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief that, if granted, would affect the behavior of the particular parties listed in his complaint."  *Id.*

Here, Plaintiff asks for declaratory judgment with respect to two past actions by Defendants, i.e., that they "were required to give" him an evaluation "prior to imposing" conditions as part of his parole, and that Defendant Clements "was required" to give Plaintiff $89.50 when he was paroled.  *2nd Am. Compl.* [#9] at 16.  Even were the Court to grant these two requests, such judgments would not "affect[ ] the behavior of defendant toward the plaintiff," because Defendants would not be required to take any course of action.  *See Rhodes v. Stewart*, 488 U.S. 1, 4 (1988).  In other words, Plaintiff is seeking a retrospective opinion that Defendants wrongly harmed him, which is an impermissible use of a declaratory judgment.  *See Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (holding that a claim for declaratory relief was moot where the "primary claim of a present interest in the controversy is that [the plaintiff] will obtain emotional satisfaction from [the] ruling"); *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) ("This 'legal interest' must be more than simply the satisfaction of a declaration that a person was wronged.").  Plaintiff's first and third requests are therefore moot.  Thus, the Court **RECOMMENDS** that the CDOC Defendants' Motion to Dismiss Plaintiff's first and third requests for declaratory judgment be **GRANTED**.

With respect to Plaintiff's second request regarding the PRA, he asks for a declaratory judgment stating that Defendants "are required" to conduct the assessment. *See 2nd Am. Compl.* [#9] at 16.  This request, along with the supporting allegations found in the Second Amended Complaint, states "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). The Court therefore finds that this request for declaratory judgment is not moot.  Thus, the Court **RECOMMENDS** that the CDOC Defendants' Motion to Dismiss Plaintiff's second request for declaratory judgment be **DENIED**.

Accordingly, it is **RECOMMENDED** that CDOC's Motion [#34] be **GRANTED in part and DENIED in part**, as set forth above.

## B. BTTI's Motion to Dismiss

Plaintiff requests injunctive relief against Defendants BTTI and Meyer based on their alleged violation of his "constitutional rights to due process, equal protection, to custody of his children, and to parent them without governmental interference by unlawfully and wrongfully prohibiting him from having any type of contact with his children." *See 2nd Am. Compl.* [#9] at 10.  Defendants BTTI and Meyer assert in their motion to dismiss that they are not state actors and, consequently, Plaintiff's claim that they committed a constitutional violation cannot survive.  *See BTTI's Motion* [#29] at 7.  Plaintiff did not file a response directed at BTTI's Motion.

Defendant BTTI "is an Approved Treatment Provider and contracts with the CDOC to provide treatment services to convicted sex offenders."  *BTTI's Motion* [#29] at 2.

Defendant Meyer "was, at all relevant times here, the director and a Licensed Professional Counselor at BTTI." *Id.* "The only proper defendants in a Section 1983 claim are those who represent the state in some capacity, whether they act in accordance with their authority or misuse it." *Gallagher v. "Neil Young Freedom Concert"*, 49 F.3d 1441, 1447 (10th Cir. 1995). Four tests are used to determine whether a private entity may be found to be acting under color of state law and, therefore, may be liable pursuant to Section 1983. *See id.* In short, these tests are the nexus test, the symbiotic-relationship test, the joint-activity test, and the public-functions test. *See id.*

The nexus tests requires the Court to consider "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Id.* (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)). The symbiotic-relationship test asks whether the state and the private party have "so far insinuated [themselves] into a position of interdependence" that a symbiotic relationship formed. *Id.* (citing *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 175 (1972); quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961)). The joint-activity test inquires whether the private party is "a willful participant in joint activity with the State or its agents." *Id.* (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). The public-function test determines whether the private entity has exercised "powers traditionally reserved to the State." *Id.* (quoting *Jackson*, 419 U.S. at 352). In short, pursuant to each test, a plaintiff must show that "the alleged deprivation of constitutional rights was 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.'" *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935

(1982)).

The allegations in Plaintiff's Second Amended Complaint fall far short of meeting the requirements of any of the above-mentioned tests.   Plaintiff states that Defendant Sweeney-Hoover referred him to Defendant BTTI.   *See 2ⁿᵈ Am. Compl.* [#9] at 4.  Then, in a wholly conclusory manner, he states that he completed Defendant BTTI's intake process "under duress and coercion."   *Id.*  He asserts that he was then admitted into Defendant BTTI's Sex Offense Specific treatment program without having first received the mandatory sex offender specific evaluation.   *See id.*  He alleges, however, that the CDOC Defendants did not authorize or pay for the sex offender evaluation to occur.   *See id.* at 4-5.

The Tenth Circuit has held that other entities such as Defendant BTTI are not state actors simply because they have a service contract with the State.  *See, e.g.*, *Sigmon v. Cmt'y Care HMO, Inc.*, 234 F.3d 1121, 1127 (10th Cir. 2000) (non-governmental drug treatment agency).  Plaintiff has not shown that "there is a sufficiently close nexus between the State and the challenged action of [Defendants BTTI and Meyer] so that the action of the latter may be fairly treated as that of the State itself."   *Jackson*, 419 U.S. at 351. Plaintiff has not demonstrated that the State and Defendants BTTI and Meyer have "so far insinuated [themselves] into a position of interdependence" that a symbiotic relationship formed.  *Moose Lodge No. 107*, 407 U.S. at 175; *Burton*, 365 U.S. at 725. Plaintiff has not provided allegations that Defendants BTTI and Meyer were "willful participant[s] in joint activity with the State or its agents."   *Adickes*, 398 U.S. at 152.

Finally, Plaintiff fails to show that Defendants BTTI and Meyer have exercised "powers traditionally reserved to the State."   *Jackson*, 419 U.S. at 352.  The Third Circuit has noted that "the traditionally exclusive public function requirement is a rigorous standard

that is rarely . . . satisfied." *Leshko v. Servis*, 423 F.3d 337, 347 (3d Cir. 2005).  For

example, in *Heilman v. T.W. Ponessa and Associates*, No. 4:07-cv-1308, 2008 WL 275731,

at *11 (M.D. Pa. Jan. 30, 2008), the court found that a sex offender who was required to

undergo counseling in order to comply with his probation conditions could not bring a

Section 1983 claim against the private facility and individual employed there because they

were not state actors "clothed with state authority" and had not "abused power granted by

the state."  *See also Robert S. v. Stetson School, Inc.*, 256 F.3d 159, 164-69 (3d Cir. 2001)

(holding that a private school that specialized in educating juvenile sex offenders was not

a state actor, although the school received government funding and students were not

allowed to leave without permission).

Here, Plaintiff Meyer is a private individual employed by Plaintiff BTTI, a private

business.  Plaintiff enrolled in BTTI's treatment program to comply with his probation

conditions.  "The essence of section 1983's color of law requirement is that the alleged

offender, in committing the act complained of, abused a power or position granted by the

state."  *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 24 (3d Cir. 1997).  Plaintiff has not

alleged that these Defendants have "abused a power or position granted by the state."  *See

id.*  In fact, to the contrary, Plaintiff has merely alleged that the State did not authorize

Defendants BTTI and Meyer to conduct the test which he believes was mandated by state

law.  This assertion alone precludes attribution of state action to Defendants BTTI and

Meyer.

Thus, the Court finds that Defendants BTTI and Meyer were not state actors for the

purpose of Plaintiff's Section 1983 claims.

Accordingly, the Court **RECOMMENDS** that BTTI's Motion [#29] be **GRANTED**.

### IV.  Conclusion

In summary, the Court respectfully **RECOMMENDS** that BTTI's Motion [#29] be **GRANTED** and that CDOC's Motion [#34] be **GRANTED in part and DENIED in part**, as follows: (1) Plaintiff's first and second claims should be dismissed, other than his claims for injunctive relief pursuant to the Due Process Clause against Defendants Clements, Lucero, and Miller in their official capacities and against Sweeney-Hoover in her official and individual capacities; (2) Plaintiff's third claim (which includes all claims against Defendants BTTI and Meyer) should be dismissed; (3) Plaintiff's fourth claim (which includes all claims for monetary damages against Defendant Clements in both his official and individual capacities) should be dismissed; and (4) Plaintiff's first and third requests for declaratory judgment should be dismissed.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  January 19, 2012

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge