IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-cv-248-RBJ-KLM

MICHAEL SEAN EDMOND

      Plaintiff.

v.

TOM CLEMENTS, Executive Director of the Colorado Department of Corrections (CDOC),
JEANEENE MILLER, Director of Division of Adult Parole, Community Corrections, and Youth Offenders System (YOS),
ALLISON SWEENEY-HOOVER, Community Parole Officer,
BECKY R. LUCERO, Chairman of the Colorado Board of Parole,
JAMES MEYER, LPC, Executive Director of the Bijou Treatment & Training Institute (BTTI), and
BIJOU TREATMENT & TRAINING INSTITUTE (BTTI).

      Defendants.

## ORDER

This matter is before the Court on defendants James Meyer and Bijou Treatment & Training Institute's ("BTTI defendants") motion to dismiss [docket #29]; defendants Tom Clements, Jeaneene Miller, Allison Sweeney-Hoover, and Becky R. Lucero's ("CDOC defendants") motion to dismiss [#34]; and the recommendation of a magistrate judge regarding these motions [#54].

**Facts**

In brief summary, the gist of Mr. Edmond's complaint is twofold. First, he claims that he did not receive a cash payment upon his release from prison to parole. Second, he claims that he

was never given a sex offender evaluation and therefore was improperly ordered to participate in sex offense treatment that included a requirement that he have no contact with his children.

Mr. Edmond is a former inmate, now on parole, of the Colorado Department of Corrections ("CDOC"). He had been sentenced by the state court to 10-years in prison plus five years mandatory parole. The felony was not a sex offense. However, in a separate case he pled guilty to "Sexual Assault-10-year Age Difference," a class one misdemeanor. He was sentenced on that sex offense to one year in jail, to run concurrently with his felony sentence.

### The Cash Payment Issue

On January 6, 2010 Mr. Edmond filed a grievance within the CDOC alleging he had not received $89.50 owed to him ($100 less a $10.50 deduction for an identification card). Two additional grievances concerning the money issue were denied.

### The Sex Offense Evaluation Issue

On November 24 and December 17, 2009, prior to being released on parole, Mr. Edmond signed a "Notice to Register as a Sex Offender." He also signed a Parole Board order providing that "[p]arolee shall participate in an assessment/evaluation to determine CPSOP (Community/Parole Sex Offender Program) Supervision."

On January 14, 2010 Mr. Edmond was released to parole and assigned to the regional CPSOP for supervision under defendant Allison Sweeney-Hoover. Among other documents he signed a "Sex Offender Supervision Directive/Lawful Order" and another "Notice to Register as a Sex Offender." Pursuant to CDOC Administrative Regulation No. 250-48(IV)(H), Ms. Sweeney-Hoover referred Mr. Edmond to the Bijou Treatment & Training Institute ("BTTI") for offense specific treatment. He completed the intake process and signed a treatment contract which stated, "I will have no contact in any form with any children under the age of 18,

including my own children or other family members." However, he states that he signed these papers "under duress and coercion." He contends that he should have been received a sex offender evaluation pursuant to C.R.S. §§ 16-11.7-104(1) and 16-11.7-105(2) prior to the imposition of the sex offender conditions as part of his parole including his admission to BTTI's sex offense specific treatment program.

Lawsuit

Mr. Edmond filed his initial complaint on January 31, 2011. In his Second Amended Complaint [#9] he asserts four claims for relief: (1) the CDOC violated his constitutional rights to due process, equal protection, and Fifth Amendment right not to incriminate himself by "erroneously imposing the sex offender conditions as part of his parole;" *id.* at 6; (2) the CDOC and the BTTI defendants violated his constitutional rights to due process, equal protection, custody of his children, and to parent his children without government interference "by unlawfully and wrongfully prohibiting him from having any type of contact with his children;" *id.* at 9; (3) defendants Clements, Miller and Lucero negligently failed to follow proper procedures to "ensure that all CDOC parolees, who are classified as sex offenders, receive a mandatory sex offense specific evaluation;" *id.* at 13; and (4) defendant Tom Clements wrongfully deprived Mr. Edmond of the $89.50 he was entitled to receive. *Id.* at 15.

In his prayer for relief, Mr. Edmond requests (1) an award of $89.50 against defendant Clements, (2) a declaratory judgment that the defendants were required to give Mr. Edmond a sex offense specific evaluation prior to imposing the sex offender conditions as part of his parole, and (3) a declaratory judgment that defendants are required to conduct a Parental Risk Assessment ("PRA") at no expense to Mr. Edmond.

On August 1, 2011 the BTTI defendants filed a motion to dismiss all claims asserted against them [#29]. Mr. Edmond did not file a Response. On August 8, 2011 the CDOC defendants filed a motion to dismiss the claims against them [#34]. Mr. Edmond filed a response, [#46]. The CDOC defendants filed a reply [#52], and the BTTI defendants also submitted a "reply" [#48] meant to address any arguments Mr. Edmond may have directed toward them in his response to the CDOC's motion.

On January 19, 2012 Magistrate Judge Mix issued a Report and Recommendation addressing both motions to dismiss [#54]. She recommended that the BTTI defendants' motion to dismiss be granted, and the CDOC defendants' motion to dismiss be granted in part and denied in part. Mr. Edmond filed a timely objection on February 6, 2012 [#55].

**Standard**

Following the issuance of a magistrate judge's recommendation on a dispositive matter the district court judge must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The district judge is permitted to "accept, reject, or modify the recommended disposition; receive further instruction; or return the matter to the magistrate with instructions." *Id.*

**Conclusions**

**The BTTI defendants' Motion to Dismiss [#29]**

"The only proper defendants in a Section 1983 claim are those who represent the state in some capacity, whether they act in accordance with their authority or misuse it." *Gallagher v. "Neil Young Freedom Concert,"* 49 F.3d 1442, 1447 (10th Cir. 1995). To determine whether a party's conduct constitutes state action, the Tenth Circuit has endorsed four tests. First, the "nexus test," considers "whether there is a sufficiently close nexus between the State and the

4

challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Id.* (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974)). Second, the "symbiotic-relationship test," looks at whether the state has "so far insinuated itself into a position of interdependence with the private party that there is a symbiotic relationship between them." *Id.* (citing *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 175 (1972)). Third, the "joint activity" test, asks whether the private party is a "willful participant in joint activity with the State." *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). Fourth, the "public-function" test looks to whether the private party "exercises powers traditionally exclusively reserved to the State." *Id.* (citing *Jackson*, 419 U.S. at 352).

In his Second Amended Complaint, Mr. Edmond does not allege that the BTTI defendants qualify as state actors under any of the above tests. Mr. Edmond alleges that Ms. Sweeney-Hoover referred him to BTTI for treatment, and that BTTI should have administered the evaluation before admission. Mr. Edmond acknowledges that he did receive an evaluation prior to admission to the treatment program because CDOC did not authorize or pay for an evaluation. He does not allege that BTTI was independently responsible for administering the test, or that BTTI conspired with the State to prevent his evaluation. His allegations, liberally construed, do not allege in words or substance that there is a "sufficiently close nexus" between CDOC or the state of Colorado and the BTTI defendant's actions. *See Jackson*, 419 U.S. at 351. There is also no allegation that CDOC has insinuated itself into the management of BTTI, such that a symbiotic relationship has formed. *See Moose Lodge No. 107*, 407 U.S. at 175. Mr. Edmond has not alleged that the BTTI defendants were "willful participants" in the State's activities, or that the BTTI defendants exercised "powers traditionally reserved to the state." *See Jackson*, 419 U.S. at 352.

A private entity which has a service contract with the state can be a state actor but only if the private entity or party performs the contract with the co-objective of violating the individual's rights. *See Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1127 (10th Cir. 2000) (finding that a private drug treatment program hired by the city of Tulsa was not a state actor). The existence of a contract between the state and a private party is insufficient to demonstrate that the private entity is a state actor. Mr. Edmond has alleged no facts that demonstrate that the BTTI defendants engaged in any unlawful acts in fulfilling its side of the contract.

Therefore, Magistrate Judge Mix's Recommendation [#54] is affirmed with regard to the BTTI defendants, and the BTTI defendants' Motion to Dismiss [#29] is GRANTED.

**CDOC defendants' Motion to Dismiss [#34]**

Mr. Edmond alleges that the CDOC defendants violated his constitutional right to due process, equal protection, and his Fifth Amendment right against self-incrimination by (1) erroneously imposing sex offender conditions as part of his parole, (2) interfering with his parenting rights and prohibiting him from having contact with his children, (3) failing to give him the sex offense specific evaluation, and (4) withholding money he was entitled to upon his release. [#9].

The CDOC defendants assert six arguments in support of their motion to dismiss Mr. Edmond's Second Amended Complaint: (1) Mr. Edmond's claim for damages against the CDOC defendants in their official capacity is barred by the Eleventh Amendment; (2) Mr. Edmond's claims against Mr. Clements, Ms. Miller, and Ms. Lucero fail for lack of personal participation; (3) Mr. Edmond's claims are barred by res judicata and collateral estoppel; (4) Mr. Edmond fails to state a claim for a constitutional violation under any theory; (5) Mr. Edmond fails to state a

claim for damages; and (6) the CDOC defendants are entitled to Qualified Immunity. The arguments will be addressed below.

### (1) Eleventh Amendment Immunity: Fed. R. Civ. P. 12(b)(1)

The Eleventh Amendment acts as a "bar to suits in federal courts against an unconsenting state brought by the state's own citizens." *Robinson v. Kansas*, 295 F.3d 1183, 1188 (10th Cir. 2002). The bar only applies to claims for monetary relief. If a "private party sues a state officer for prospective injunctive or declaratory relief from an ongoing violation of the Constitution or federal laws, the suit is not considered to be against the state itself and the Eleventh Amendment does not apply." *Id.*

Mr. Edmond's only claim for money damages is against Mr. Clements for the sum of $89.50. A suit against Mr. Clements in his official capacity is actually a suit against his office and thus is no different than a suit against the State itself. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, Mr. Edmond's claim for monetary relief against Mr. Clements in his official capacity is barred by the Eleventh Amendment. There is no authority in the law for a claim against Mr. Clements personally for those funds. The statute on which Mr. Edmond relies, C.R.S. § 17-22.5-202(1), states that "the executive director or the executive director's designee "may furnish any inmate being released on parole a reasonable sum of money not to exceed on hundred dollars…." C.R.S. 17-22.5-202(1). That plainly was not intended to create individual liability on the part of whomever happens to be the executive director or his designee when an inmate is paroled.

Moreover, as the magistrate judge noted, this statute is in a section of the code applicable to crimes committed prior to July 1, 1979. It is written in non-mandatory language ("may furnish"). In his objection to the magistrate judge's order Mr. Edmond for the first time refers to

a CDOC Administrative Regulation which apparently states that certain offenders "shall be provided $100.00 upon departure." Objection [#55] at 9. I do not have a copy of this regulation. Regardless, there is nothing to suggest that it, any more than the statute, is intended to impose personal liability on the executive director.

There has been a surprising amount of litigation over $89.50, making the Court curious as to why the defendants have battled so vigorously on this seemingly small item. Nevertheless, the Court concludes that Mr. Edmond's claim for monetary damages against Mr. Clements is not meritorious, and therefore, the fourth claim for relief is dismissed in its entirety.

(2) Lack of Personal Participation

To establish supervisory liability, Mr. Edmond must allege sufficient facts to support the CDOC defendants' personal participation in the alleged constitutional violation. "Individual liability under §1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Mr. Edmond must allege an "affirmative link" between the CDOC defendant's conduct and the constitutional violation. *Stidham v. Peace Officer Standards & Training*, 265 F.2d 1165, 1167 (10th Cir. 1991). Individuals cannot be held liable under §1983 on the basis of supervisory status alone. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008).

Mr. Edmond alleges that these three CDOC defendants personally participated through their "negligence, negligent supervision, failure to instruct or warn, and failure to implement proper training procedures for community parole officers." [#9] at 2. However, Mr. Edmond has not alleged any specific conduct with regard to defendants Clements, Miller, or Lucero. Mr. Edmond has not pled any allegation of "personal direction or of actual knowledge and acquiescence." *Woodward v. City of Worland*, 977 F.2d 1392, 1400 (10th Cir. 1992). Mr.

Edmond does not plead any specific facts about the defendants' actions or responsibilities. To the extent that Mr. Edmond contends that they were negligent in their supervisory position, "negligent conduct does not implicate the due process clause of the Fourteenth Amendment to afford section 1983 relief." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990). Therefore, all claims asserted against defendants Clements, Miller, and Lucero in their individual capacities are dismissed.

(3) Res Judicata, Collateral Estoppel

The CDOC defendants contend that the claims are barred by res judicata or collateral estoppel, because the same claims were raised but dismissed in state court. This argument requires the Court to consider matters outside the pleadings, i.e., the state court complaint [#34-1] and the state judge's order of dismissal [#34-2]. The Court could perhaps take judicial notice of those documents. However, setting aside the question whether plaintiff raised or should have raised the PRA issue in that case (which, as discussed below, is an issue that has not been clearly developed yet), it is at least clear that the issue was not expressly addressed by the state court. Rather, the state court dismissed the complaint in a one-page order essentially without findings, conclusions or analysis.

If the res judicata or collateral arguments are correct, then they are dispositive of this case, and there would be no need to discuss any other issue. However, they were inserted in the CDOC defendants' motion essentially as "just one more argument" and were not developed in a meaningful way. Therefore, I am not prepared at this time to resolve this case on that basis.

(4) Failure to State a Claim: Fed. R. Civ. P. 12(b)(6)

Mr. Edmond's first claim for relief asserts that the CDOC defendants violated his rights under the Fifth Amendment. [#9] at 6. The Fifth Amendment states that no person "shall be

compelled in any criminal case to be a witness against himself." A violation of one's Fifth Amendment right against self-incrimination only occurs "if one has been compelled to be a witness against himself in a criminal case." *Chavez v. Martinez*, 538 U.S. 760, 770 (2003). Mr. Edmond has not alleged that he was compelled to be a witness against himself in a criminal case. Therefore, Mr. Edmond's claims under the Fifth Amendment fail as a matter of law and are dismissed.

Mr. Edmond's first, second, and third claims assert equal protection violations. The Equal Protection Clause of the Fourteenth Amendment dictates that no State "shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all person similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (citing *Plyer v. Doe*, 457 U.S. 202, 216 (1982)). Mr. Edmond has not alleged that any other parolee is similarly situated or, therefore, that he is being treated differently than any other similarly-situated parolee. "[E]ven pro se litigants must do more than make mere conclusory statements regarding constitutional claims." *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995). Mr. Edmond has failed to state a cause of action for which relief can be granted under an equal protection theory.

Mr. Edmond's first, second, and third claims also allege that his due process rights were violated because the sex offender conditions imposed upon him improperly denied him contact with his children. The Fourteenth Amendment's Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. In its inquiry the Court must first ask "whether there exists a liberty or property interest which has been interfered with by the State," and second, "whether the procedures

10

attendant upon this deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

"[P]arents have a liberty interest, protected by the Constitution, in having a reasonable opportunity to develop close relations with their children." *Wirsching v. Colorado,* 360 F.3d 1191, 1198 (10th Cir. 2004). The question, therefore, is whether CDOC's procedures have unconstitutionally deprived him of that liberty interest.

Mr. Edmond argues that he could not be required to participate in sex offense treatment without receiving a sex offense evaluation. I will assume for present purposes, without knowing all of the history, that a sex offense evaluation should have been performed prior to his sentencing in the first place. *See* C.R.S. 16-11-102(1)(b). If that was not done, then one can at least make a colorable argument that it should have been done in conjunction with his release on parole. Mr. Edmond cites C.R.S § 16-11.7-104. That statute concerns individuals being considered for "probation," not parole. Section 16-11.7-105 requires sex offense treatment for adult sex offenders "to the extent appropriate to such offender based upon the recommendation of the evaluation and identification made pursuant to section 16-11,7-104 or based upon any subsequent recommendations by the department of corrections. . . ." Does that mean that if an evaluation that should have been performed prior to sentencing was not performed, then CDOC can make a recommendation for treatment without requiring an evaluation? I need not answer that somewhat complicated question at this time. Again, for present purposes, I will assume that an evaluation was required. Frankly, it makes sense. How can one structure a meaningful treatment program for an offender without conducting some form of evaluation as to what treatment would be appropriate?

In its motion to dismiss [#29], BTTI states that "[p]laintiff is currently in treatment with BTTI, and has at this time received an independent sex offender specific evaluation." *Id.* at 3. Mr. Edmond did not respond. In the CDOC defendants' motion to dismiss [#34] they make the same statement, citing the BTTI motion. *Id.* at 2. Mr. Edmond did not respond directly but repeated emphasized that an evaluation should be conducted prior to treatment. The magistrate judge mentioned BTTI's statement in a footnote. Recommendation [#54] at 17 n.9. However, because BTTI had not filed documentation confirming its assertion, and Mr. Edmond had neither confirmed nor denied the assertion, she concluded that she had no way of knowing whether Mr. Edmond had in fact received his evaluation. *Id.* She felt that she therefore "had no choice but to recommend that the CDOC Defendants' Motion to Dismiss Plaintiff's due process claims be denied." *Id.*

In his objection to the magistrate judge's recommendation [#55] Mr. Edmond did address the issue. He states that he objects to the notion that if he received a sex offender specific evaluation, his due process claim might be moot. *Id.* at 5. He states that even if he has received a sex offender specific evaluation, he has not received a PRA, and therefore, his due process claim is not moot. *Id.*

Although the Court has not been provided with any documentation demonstrating that the evaluation has been completed, it is possible that this issue is moot. However, making that determination would require the Court to look outside the four corners of the Second Amended Complaint, and therefore consideration is inappropriate in the context of a motion to dismiss under Rule 12(b)(6).

In any event, it is unclear whether or not a PRA has been conducted, or if one is even required. The CDOC defendants did not discuss the PRA issue in their motion [#34] other than

to acknowledge that Mr. Edmond contends that he did not receive such an assessment. *Id.* at 2. In their reply [#52] the CDOC defendants argue that Mr. Edmond failed to explain in his response brief why he is entitled to a PRA (not surprising given the lack of analysis in the motion), and they suggest that the Court should defer to the professional judgment of the prison administrators (without explaining what the law requires and whether it vests the CDOC with discretion to conduct or not to conduct a PRA). *Id.* at 8-9. In her recommendation [#54] the magistrate judge noted that plaintiff states that the PRA is part of the sex offense specific evaluation, and that she would not refer to the PRA as a separate assessment. *Id.* at 3 n.2.

The Court concludes that it does not have enough information concerning the requirement of a PRA, or even whether Mr. Edmond received one as part of his evaluation, to resolve this issue. It is an important issue, in that the liberty interest in parenting one's children is undeniable. Therefore, to the extent that Mr. Edmond has alleged that his due process rights were violated because he has been prohibited from contact with his children without a sex offender specific evaluation or a PRA, the Court has no option but to deny the motion to dismiss.

(5), (6) <u>Damages and Implied Immunity</u>

The money damages claim has been dismissed. Therefore, the qualified immunity issue is moot.

**Order**

1. Motion #29 is GRANTED. The claims against BTTI are dismissed with prejudice.
2. Motion #34 is GRANTED IN PART and DENIED IN PART. The claims against the CDOC defendants are dismissed with prejudice except his due process claim seeking declaratory and mandatory injunctive relief on the basis of an alleged failure to perform a sex offender specific evaluation and a Parental Responsibility Assessment.

3. The recommendation of the magistrate judge [#54] is AFFIRMED.

DATED this 29th day of June, 2012.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge