IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-00248-RBJ-KLM

MICHAEL SEAN EDMOND,

　　　　Plaintiff,

v.

TOM CLEMENTS, the Executive Director of the Colorado Department of Corrections
(CDOC),
TIM HAND, Director of Division of Adult Parole, Community Corrections, and Youth
Offender System (YOS),
ALLISON SWEENEY-HOOVER, Community Parole Officer, and
ANTHONY YOUNG, Chairman of the Colorado Board of Parole,

　　　　Defendants.
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

　　　　This matter is before the Court on Plaintiff's **Motion for Temporary Restraining
Order and for Preliminary Injunction** [Docket No. 69; Filed November 1, 2012] (the
"Motion").  On November 30, 2012, Defendants filed a Response [#75].  Plaintiff did not file
a Reply.  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C., the Motion
has been referred to this Court [#70].  The Court has reviewed the Motion, the entire case
file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set
forth below, the Court **RECOMMENDS** that the Motion [#69] be **DENIED**.

### I.  Background

　　　　Plaintiff, who proceeds in this matter *pro se*, is a prisoner with the Colorado
Department of Corrections ("CDOC").  *See 2nd Am. Compl.* [#9] at 4; *Notice of Temporary*

*Change of Address* [#105].  He brings this action against four Defendants:[1] (1) Defendant

Tom Clements, who, at the time of the events underlying this lawsuit, was the Executive

Director of CDOC; (2) Defendant Sweeney-Hoover, a Community Parole Officer; (3)

Defendant Tim Hand, the Director of the Division of Adult Parole, Community Corrections,

and Youth Offender System;[2] and (4) Defendant Anthony Young, Chairman of the Colorado

Board of Parole.[3]   *See id.*   The only remaining claims against these Defendants are

Plaintiff's requests for declaratory and injunctive relief regarding his due process claims

stemming from Defendants' alleged failure to perform a sex offender specific evaluation

and a parental risk assessment.  *See Recommendation* [#54] at 3; *Order* [#56] at 13-14.

In short, Plaintiff alleges that: (1) the CDOC Defendants "erroneously impos[ed] the sex

offender conditions as part of his parole;" (2) all Defendants interfered with his parenting

rights by "prohibiting him from having any type of contact with his children;" and (3)

Defendants Clements, Miller, and Lucero failed to ensure that he received a mandatory sex

offense evaluation.  *See id.* at 6, 10, 13.  As relief, Plaintiff requests that: (1) he be given

the sex offense specific evaluation; and (2) that he be given the Parental Risk Assessment

---

[1]  Plaintiff's Second Amended Complaint lists another Defendant, the Colorado Board of Parole, *see* [#9] at 2, but the District Judge dismissed that party on May 19, 2011. *See Order* [#10] at 4.  Further, former Defendants Bijou Treatment and Training Institute ("BTTI") and James Meyer, the Executive Director of BTTI, were dismissed by the District Judge on June 29, 2012.  *See Order* [#56].

[2]  On September 25, 2012, Defendant Tim Hand, the present Director of Division of Adult Parole, Community Corrections, and Youth Offender System, was substituted for Jeaneene Miller, who formerly held that position, as only official capacity claims remained against her.  *Minute Order* [#67].

[3]  On September 25, 2012, Defendant Anthony Young, the present Chairman of the Colorado Board of Parole, was substituted for Becky R. Lucero, who formerly held that position, as only official capacity claims remained against her.  *Minute Order* [#67].

("PRA") at no expense to himself.

Plaintiff attests that, some time in 1999, a case was initiated against him for an unspecified offense (Case No. 99CR4252 [the "1999 Case"]).  *See 2nd Am. Compl.* [#9] at 6.  Pursuant to a plea agreement, he was sentenced to ten years in prison with a five-year mandatory parole period.  *See id.*  Plaintiff avers that CDOC failed to "conduct a sex offense specific *evaluation* of the Plaintiff while he was serving his 10-year prison sentence for [the 1999 Case] as required by C.R.S. §§ 16-11.7-101 and 16-11.7-105(1), CDOC Admin. Reg. No. 700-19(IV)(G), and SOMB Standard 2.000."  *Id.* at 7 (emphasis in original).

Plaintiff further asserts that, on December 20, 2000, he was arrested for the offense of Sexual Assault-10 Year Age Difference, a class one misdemeanor pursuant to Colorado law (Case No. 00M10851 [the "2000 Case"]).[4]  *See id.* at 6.  On July 4, 2004, he accepted a plea agreement and pleaded guilty to the charge, in conjunction with which, on October 13, 2004, he received a one-year jail sentence, which was to run concurrently with the ten-year sentence imposed in the 1999 Case.  *See id.*  He avers that "the El Paso County District Court failed to ORDER [that] a sex offense specific *evaluation* be conducted as part of the Plaintiff's presentence investigation report (PSIR) for [the 2000 Case] as required by C.R.S. §§ 16-11-102(1)(b) and 16-11.7-105(1) and Sex Offender Management Board (SOMB) Standards and Guidelines (Standards) 2.020."  *Id.* at 6-7 (emphasis in original).

On November 24, 2009, and December 17, 2009, prior to his release for the five-

---

[4] The Second Amended Complaint does not make clear how, if Plaintiff was sentenced to ten years in prison in connection with the 1999 Case, he was free to be "arrested" in connection with the events underlying the 2000 Case.

year mandatory parole period in connection with the 1999 Case, Plaintiff signed Notices to Register as a Sex Offender.  *See id.* at 3.  On January 4, 2010, he signed a Parole Board Order that stated, as one of its conditions, that, "Parolee *shall* participate in an assessment/*evaluation* to determine CPSOP (Community/Parole Sex Offender Program) supervision."  *Id.* (emphasis in original).  Plaintiff avers that he was never scheduled for this mandatory evaluation.  *See id.* at 8.

Upon his release, Plaintiff was assigned to the regional Community/Parole Sex Offender Program ("CPSOP") with Defendant Sweeney-Hoover as his parole supervisor. *See id.* at 4.  Plaintiff states that, "pursuant to CDOC Admin. Reg. No. 250-48(IV)(D)(1), [he] signed all of the initial office visit documents, including sex offender specific documents such as the 'Sex Offender Supervision Directive/Lawful Order' and the 'Notice to Register As A Sex Offender.'"  *Id.*

Defendant Sweeney-Hoover referred Plaintiff to former defendant BTTI.  *See id.* at 8.  On January 19, 2010, he was admitted to BTTI's Sex Offense Specific treatment program, after completion of the intake process "under duress and coercion."  *Id.* at 8.  One of the documents Plaintiff signed was the Treatment Contract for Sex Offenders, which included the statement, "I will have no contact in any form with any children under the age of 18, including my own children or other family members."  *Id.* at 11.  Plaintiff states that he "was *not* given the *mandatory* sex offender specific *evaluation* required by C.R.S. §§ 16-11.7-104(1) and 16-11.7-105(2) prior to the erroneous imposition of the sex offender conditions as part of his parole and his admittance into Defendant BTTI's Sex Offense Specific treatment program."  *Id.* at 8 (emphasis in original).

Plaintiff further alleges that, on March 2, 2010, Defendant Sweeney-Hoover added

him to a list of parolees who needed to take the sex offender specific evaluation and plethysmograph test, "because she said the CDOC had finally received the funds in which to pay for the *mandatory* sex offender specific *evaluations* to be conducted." *Id.* at 5 (emphasis in original). In spite of this, Plaintiff states that he was never scheduled for the evaluation. *See id.* Plaintiff asserts that, because he was never given the evaluation, he was wrongfully forced to participate in the sex offender program as a condition of his parole. *See id.* at 8-9. On January 31, 2011, Plaintiff filed this lawsuit. *See Compl.* [#1].

In the Motion at issue, Plaintiff seeks an order lifting the requirements that he participate in sex offender treatment and that he have no contact with his minor daughter because Defendants allegedly imposed the conditions without conducting a sex offense specific evaluation and because Defendants have not paid for a PRA. *Motion* [#69] at 5-7, 11.

## II. Legal Standard

Fed. R. Civ. P. 65(a) and (b) govern preliminary injunctions and temporary restraining orders. "Where the opposing party has notice, the procedure and standards for issuance of a temporary restraining order mirror those for a preliminary injunction." *Emmis Commc'ns Corp. v. Media Strategies, Inc.*, No. 00-WY-2507CB, 2001 WL 111229, at *2 (D. Colo. Jan. 23, 2001) (citing 11A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2951 (2d ed. 1995)). Here, because Defendants were given notice and an opportunity to respond, the Court analyzes the Motion under the standards for issuance of a preliminary injunction.

Injunctive relief is an extraordinary remedy that should only be granted when the moving party clearly and unequivocally demonstrates its necessity. *See RoDa Drilling Co.*

*v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)); *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, a party requesting injunctive relief must clearly establish the following: (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits.   *Schrier*, 427 F.3d at 1258.   It is well-established that "[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (citations omitted).

"The purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial on the merits can be held." *Bray v. QFA Royalties LLC*, 486 F. Supp. 2d 1237, 1241 (D. Colo. 2007) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)).   "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *Schrier*, 427 F.3d at 1267.   Moreover,

> [b]ecause the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, we have identified the following three types of specifically disfavored preliminary injunctions . . . (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that [he] could recover at the conclusion of a full trial on the merits.

*Schrier*, 427 F.3d at 1258-59 (citations omitted).   These disfavored injunctions are "more

closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 1259.

### III. Analysis

At the outset, the Court observes that the relief sought by Plaintiff is essentially identical to the relief he seeks in connection with his remaining causes of action.  As noted, Plaintiff seeks an order lifting the requirements that he participate in sex offender treatment and that he have no contact with his child because Defendants allegedly imposed the conditions without conducting a sex offense specific evaluation and because Defendants have not paid for a PRA. *Motion* [#69] at 5-7, 11.  Thus, the relief Plaintiff seeks would alter the status quo rather than preserve it and would also require Defendants to act.  Therefore, the injunctive relief sought by Plaintiff "constitutes a specifically disfavored injunction" that "must be more closely scrutinized." *Schrier*, 427 F.3d at 1261.  Accordingly, the Motion must be denied unless Plaintiff's "right to relief [is] clear and unequivocal." *Id.* at 1258.

The law is well-established that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively.  *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976).  Courts should grant injunctive relief involving the management of prisons only under exceptional and compelling circumstances.  *Taylor v. Freeman*, 34 F.3d at 266, 269-70 n.2 (4th Cir. 1994); *see also Citizens Concerned for Separation of Church & State v. Denver*, 628 F.2d 1289, 1299 (10th Cir. 1980).  Indeed, the Court of Appeals for the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems.  It is a delicate role assigned to the federal courts to display that restraint so

necessary in the maintenance of proper federal-state relations." *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (quotation omitted).  As such, "intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts . . . .  [This] is especially true where mandatory injunctive relief is sought and only preliminary findings as to the plaintiff's likelihood of success on the merits have been made." *Taylor*, 34 F.3d at 269 (citations omitted).

In Colorado, the Colorado Parole Board has "unlimited discretion to grant or deny parole" for defendants serving sentences for crimes committed on or after July 1, 1985. *Mulberry v. Neal*, 96 F. Supp. 2d 1149, 1150 (D. Colo. 2000) (citing *Thiret v. Kautzky*, 792 P.2d 801, 805 (Colo. 1990)); C.R.S. § 17-2-201.  Federal courts may not reweigh evidence, rule on credibility matters, or substitute their judgment for the judgment of the parole board. *Fiumara v. O'Brien*, 889 F.2d 254, 257 (10th Cir. 1989).  "The granting of parole to a prisoner does not terminate the sentence that he is serving."  *United States v. Einspahr*, 35 F.3d 505, 507 (10th Cir. 1994).  Instead, "supervision in the prison setting is replaced with supervision by probation authorities[, and t]he confinement period and any subsequent period of parole supervision are best understood as two parts 'of a single indivisible sentence.'" *Id.* (citing *United States v. Thompson*, 979 F.2d 743, 744 (9th Cir. 1992)). Thus, the same principles of deference and discretion should apply to Plaintiff's conditions as an inmate or a parolee.

Plaintiff must clearly establish each of the following: (1) Plaintiff will suffer irreparable injury unless the injunction issues; (2) the threatened injury outweighs whatever damage the proposed injunction may cause Defendants; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the

merits.  *Schrier*, 427 F.3d at 1258.  Therefore, failure to establish any individual element will justify dismissal of the requested relief.  *See Winter*, 555 U.S. at 23.

## A.    Irreparable Harm

To obtain injunctive relief, Plaintiff must first show that he will suffer irreparable harm if his request for injunctive relief is denied.  *Schrier*, 427 F.3d at 1258.  "To constitute irreparable harm, an injury must be certain, great, actual, 'and not theoretical.'"  *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).  Irreparable harm is more than "merely serious or substantial" harm.  *Id.* (citation omitted).  The party seeking the preliminary injunction "must show that 'the injury complained of is of such imminence that there is a clear and present need for equitable relief' to prevent irreparable harm."  *Id.* (citation omitted).  Therefore, to demonstrate irreparable harm, Plaintiff "must establish both that harm will occur, and that, when it does, such harm will be irreparable."  *Vega v. Wiley*, 259 F. App'x 104, 106 (10th Cir. 2007).  Finally, an injunction is only appropriate "to prevent existing or presently threatened injuries.  One will not be granted against something merely feared as liable to occur at some indefinite time in the future."  *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931).

Plaintiff asserts that he requires a preliminary injunction in order to exercise his constitutional right to parent his minor daughter.  *Motion* [#69] at 8.  He asserts that "[p]arents have a liberty interest, protected by the Constitution, in having a reasonable opportunity to develop close relationships with their children."  *Motion* [#69] at 6 (citing *Wirsching v. Colorado*, 360 F.3d 1191, 1198 (10th Cir. 2004)).  "When an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury

is necessary." *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) citing 11A Charles Alan Wright, et. al., *Federal Practice and Procedure* § 2948.1 (2d ed. 1995). Regarding classified sex offenders' visitation with minor children, the Tenth Circuit has determined that an inmate's constitutional rights are not violated by prohibiting visits with his child. *Wirsching*, 360 F.3d at 1201 (finding no constitutional violation where the CDOC prohibited visits between the inmate, a convicted sex offender who refused to comply with the requirements of the SOTMP, and his child). The *Wirsching* court noted that "[t]he very object of imprisonment is confinement," and "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner." 360 F.3d at 1198 (citing *Overton v. Bazzetta*, 539 U.S. 126, 123 (2003)); *cf. Mondonedo v. Roberts*, No. 12-3045-SAC, 2012 WL 1416737, at *5 (D. Kan. Apr. 24, 2012). Parole historically has been treated like other conditional release programs as a variance on imprisonment. *See, e.g.*, *Escoe v. Zerbst*, 295 U.S. 490, 492 (1929) ("Probation or suspension of sentence comes as an act of grace to one convicted of a crime . . . ."); *see also* William M. Cohen, *Due Process, Equal Protection and State Parole Revocation Procedures*, 42 U.Colo.L.Rev. 197 (1970); Note, *Parole: A Critique of Its Legal Foundations and Conditions*, 38 N.Y.U.L.Rev. 702 (1963); Henry Weihofen, *Revoking Probation, Parole or Pardon Without a Hearing*, 32 J.Crim.L., Criminology & Police Sci. 531 (1942). Thus, the Court hesitates to find as a matter of law that Plaintiff has pled sufficient facts to establish the violation of a constitutional right, as this question is better addressed with the merits of the case. However, for the purposes of finding a showing of irreparable injury, the Court recognizes that Plaintiff has conclusorily alleged a violation of a constitutional right, and for the purposes of this analysis alone assumes that no further showing of irreparable harm is required at this stage. *See*

-10-

*Kikumura*, 242 F.3d at 963.

**B.      Balance of Harms and Public Harm**

Regarding the second and third elements required in order to be entitled to entry of a preliminary injunction, Plaintiff must demonstrate that "the threatened injury . . . outweighs whatever damage the proposed injunction may cause the opposing party" and that "the injunction, if issued, would not be adverse to the public interest." *Schrier*, 427 F.3d at 1258. Although Plaintiff alleges a constitutional violation, he makes no further showing to establish that his alleged injuries outweigh the interests of CDOC and the public. *Motion* [#69] at 9-11. He seems to rest his argument on an assumption that the CDOC has no valid interest which outweighs a conclusorily alleged constitutional right. *Id.* This is simply not the law.

It is well-settled law that parolees do not enjoy "the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special parole restrictions." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1982). For example, in *Griffin v. Wisconsin*, 483 U.S. 868, 873-74 (1987), the Supreme Court determined that a Wisconsin probation regulation permitting warrantless searches fell within the "special needs" exception to the warrant requirement, and that this restriction on probationers' Fourth Amendment rights served the dual penological goals of effective rehabilitation and insulating communities from the potential harms of recidivism. *Id.* at 875.

The Supreme Court restated these goals in *United States v. Knights*, 534 U.S. 112, 114 (2001), where the defendant had signed a probation order requiring him to submit to warrantless searches by a probation officer or law enforcement officer. There, the Supreme Court again emphasized the two purposes of the probation system: the effective

-11-

rehabilitation of criminals and the protection of the public from harm created by recidivism. *Id.* at 120-21.  The Court held that to allow probationary searches without a warrant, but not investigatory searches, would unnecessarily inhibit the government from achieving the second goal.  *Id.*  Thus, it is clear that the mere allegation of a constitutional violation by a parolee does not alone outweigh potential governmental and penological interests.

CDOC has a significant interest in protecting actual victims and potential victims in the community from harm, and this interest is largely coextensive with the interests of the public.  Defendants assert that Plaintiff has been deemed in need of sex offender treatment based on a psychosexual evaluation risk score suggesting that he presents a moderate to high range of risk for future sexual offending.  *Resp.* [#75] at 11, 12; *see Def. Ex. A.* [#75-1] at 19.  "Parole has an undeniable basic purpose of rehabilitation." *United States v. Shead*, 568 F.2d 678, 682 (10th Cir. 1978) (citing *Zerbst v. Kidwell*, 304 U.S. 359, 363 (1938)). Therefore, parole conditions may infringe on otherwise constitutionally protected liberties, provided that the restrictions are reasonably related to the purposes of parole.  *See United States v. Payne*, 181 F.3d 781 (6th Cir. 1999).  "Community and victim safety, and risk management are paramount when making decisions about the management and/or treatment of offenders."  *See* SOMB Standards and Guidelines, at 78 (available at h t t p : / / d c j . s t a t e . c o . u s / o d v s o m / s e x _ o f f e n d e r / S O _ P d f s / 2012%20ADULT%20STANDARDS%20FINAL%20C.pdf) (last visited June 20, 2013).  In order to promote both the public's interest in community safety and victim protection and Defendants' ability to pursue these goals, parole boards have broad discretion in formulating and imposing parole conditions.  *Morrissey*, 408 U.S. at 496.  "'Often vague and moralistic, parole conditions may seem oppressive and unfair to the parolee,' but parole

boards still have the discretion to create these restrictions in order 'to cover any contingency that might occur,' and to maximize 'control over the parolee by his parole officer.'" *Id.* (quotation omitted); *see People v. Black*, 915 P.2d 1257 (Colo. 1996) (holding that a sentencing scheme allowing defendants convicted of sex offenses and other crimes mandatory parole, but allowing defendants who committed only sex offenses only discretionary parole, was rationally related to public safety and thus did not violate Equal Protection Clause of Fourteenth Amendment); *People v. Alexander*, 797 P.2d 1250 (Colo. 1990) (holding that a statute which gives a parole board discretionary power to grant parole on the basis of factors other than the length of the prisoner's sentence did not deny the defendants equal protection).

Furthermore, as discussed above, Plaintiff's request is a "specifically disfavored" type of injunction, *Schrier*, 427 F.3d at 1261, and Plaintiff has a "heightened burden" of showing that "the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). Therefore, Plaintiff "must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Id.* at 976. Although the Court must construe the filings of a *pro se* litigant liberally, *Haines v. Kerner*, 404 U.S. 594, 520-21 (1972), the Court should not be a *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

Even under this relaxed pleading standard, Plaintiff clearly fails to sufficiently

address either the balance of potential harms at stake or the impact of an injunction on the public in this instance. He instead falls back on his allegations related to a purported violation of a constitutional right, incorrectly assuming that this assertion is *prima facie* sufficient to defeat all competing public and policy interests. *See Motion* [#69] at 9-11. Because the burden is on Plaintiff to establish that the balance of interests at risk weighs in his favor, the Court finds that Plaintiff has failed to make the requisite showing that his interest outweighs the harm that an injunction may cause to Defendants' rehabilitative and penological goals. *See Winter*, 555 U.S. at 23 (holding that, where plaintiffs established an irreparable injury but failed to meet the other factors, "a proper consideration of [public interest and Defendant's interest] alone require[d] denial of the requested relief"). As these interests are demonstrably coextensive with the interests of the public, the Court also finds that Plaintiff has not carried his burden of establishing that a preliminary injunction would not be adverse to the public interest. *Id.* at 26 (equating the military interest in conducting training exercises with the interests of the public and finding that Plaintiff had failed to establish that the balance of equities weighed in its favor). Having found that Plaintiff has not carried his burdens of establishing that his interest outweighs those of Defendants, and that a preliminary injunction would not be adverse to the public interest, the Court need not consider whether Plaintiff has established a substantial likelihood of success on the merits.

A preliminary injunction is an "extraordinary remedy", and, therefore, "the right to relief must be clear and unequivocal." *Nova Health Sys. v. Edmondson*, 460 F.3d 1295, (10th Cir. 2006) (internal quotation marks omitted) (quoting *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991)). In the absence of a clear and unequivocal showing, the Court finds that Plaintiff's Motion seeking injunctive relief should be denied.

### IV. Conclusion

For these reasons, the Court finds that Plaintiff has failed to meet the requirements to obtain either a temporary restraining order or a preliminary injunction. Accordingly,

IT IS HEREBY **RECOMMENDED** that Plaintiff's Motion for Injunction [#69] be **DENIED**.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: June 27, 2013

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge

-15-